**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|   |   |   |
|---|---|---|
| **KAREN G. KALLAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:08CV760** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Karen G. Kallam, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability (DIB) and Supplemental Security Income payments (SSI).  The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 13) and motion for remand (docket entry no. 14) be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and the Court will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

DENIED; that Defendant's motion for summary judgment (docket entry no. 16) be GRANTED;

and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on March 9, 2005, claiming disability due to sleep apnea,

fibromyalgia, chronic pain, depression, and eye floaters.  (R. at 62-66, 79.)  Initially, Plaintiff

alleged that the disability's onset date was June 22, 2001.  (R. at 62, 80.)  This date was

subsequently amended to July 26, 2003, as there was an adverse social security decision that

became final on July 25, 2003.  (R. at 15, 36-47.)  The Social Security Administration (SSA)

denied Plaintiff's claims initially and on reconsideration.[2]  (R. at 33-35, 55-57.)  Plaintiff

requested a hearing and on August 24, 2006, accompanied by a non-attorney representative, she

testified before an ALJ.  (R. at 365-425.)  On November 24, 2006, the ALJ denied Plaintiff's

application, finding that she was not disabled under the Act where based on her age, education,

work experience and residual functional capacity, there are jobs she could perform which exist in

significant numbers in the national economy.  (R. at 24.)  The Appeals Council subsequently

denied Plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner subject to judicial review by this Court.  (R. at 5-7.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by

substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government—the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services—under arrangement with the SSA.  20 C.F.R. Park 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits.  20 C.F.R §§ 416.920, 4041.1520; Mastro, 270

F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will

not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

burden in the final step with the testimony of a vocational expert (VE). When a VE is called to

testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

that the claimant can perform. Walker v. Bowen, 889 F.2d. 47, 50 (4th Cir. 1989). Only when

the hypothetical posed represents *all* of the claimant's substantiated impairments will the

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416,965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e.; 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1529(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability (R. at 17.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of fibromyalgia and obesity, but that these impairments did not meet or equal any listing in 20 C.F.R. Park 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 17-21.)  The ALJ next determined that Plaintiff had the RFC to perform sedentary work, finding that Plaintiff had the ability to lift or carry up to ten pounds, could stand or walk at least two hours in an eight hour workday, and could sit about six hours in an eight hour workday. (R. at 21.)  Additionally, the ALJ determined that Plaintiff "could occasionally climb stairs, stoop, kneel, and crouch, and could frequently balance."  (R. at 21, 23-24.)  Furthermore, the ALJ found that Plaintiff did not suffer from any significant manipulative, visual, communicative, or environmental limitations.  (R. at 24.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a shoe stitcher, a material cutter, an assembly line worker, or a wood handle assembler because of the amount of lifting and carrying required for each of those positions.  (R. at 24, 96-102.)  At step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 24-25.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits.  (R. at 25-26.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mem. in Supp. for Summ. J.)  In support of her position, Plaintiff argues: (1) the ALJ erred in finding Plaintiff's depression and anxiety to be non-severe impairments; (2) the ALJ erred in finding that Plaintiff's testimony was not entirely credible; (3) the ALJ erred in discounting the opinions of Plaintiff's treating physicians; and (4) the ALJ failed to consider all of Plaintiff's limitations in posing hypothetical questions to the VE.  (Pl.'s Mem. in Supp. of Mot. for Summ. J., "Pl.'s Mem." at 23-30.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and should be affirmed.  (Def.'s Mot. for Summ. J. and Mem. in Supp. Thereof, "Def.'s Mem." at 25.)

I.      **Plaintiff contends that there was not a sufficient evidentiary basis for the ALJ to conclude that Plaintiff's depression and anxiety were non-severe impairments.**

Plaintiff contends that the ALJ's finding that Plaintiff's depression and anxiety were non-severe is not supported by the substantial weight of the evidence, as required under the Act. (Pl.'s Mem. at 23.)  Specifically, Plaintiff argues that the Record lacks sufficient medical evidence that her depression and anxiety, determined earlier to be severe impairments by another ALJ, had improved since that decision.  (Pl.'s Mem. at 24.)  Additionally, Plaintiff asserts that her treating physicians all continued to diagnose her as suffering from anxiety and depression. (Pl.'s Mem. at 24.)

When evaluating a claimant's alleged mental impairment, the ALJ will first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine if the claimant has a medically determinable mental impairment.  20 C.F.R. § 404.1520(a)(b)(1).  If the ALJ determines that a medically determinable mental impairment exists, then the ALJ must rate the degree of functional limitations that results from the impairment.  See 20 C.F.R. §

404.1520(a)(b)(2).  The SSA has identified four broad functional areas in which an ALJ will rate

the degree of a claimant's functional limitations, namely: (1) activities of daily living[6]; (2) social

functioning[7]; (3) concentration, persistence and pace[8]; and (4) episodes of decompensation[9].  20

C.F.R. § 404.1520(a)(c)(3).  In rating the first three functional areas, an ALJ will utilize a five

point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520(a)(c)(4).  When

evaluating the fourth functional area, the ALJ utilizes a four point scale: none, one or two, three,

four or more.  Id.  After rating each degree of functional impairment, the ALJ must determine the

severity of the claimant's mental impairment by analyzing the ratings given to the various

functional areas.  See 20 C.F.R. § 404.1520(a)(d).  If the ALJ rates the degree of limitation in the

first three functional areas as "mild" or "none," and gives a rating of "none" in the fourth area,

---

[6] Activities of daily living include activities such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C1.  The ALJ will assess the quality of these activities by their "independence, appropriateness, effectiveness, and sustainability."  Id.  Additionally, the ALJ will determine the extent to which the claimant is able to initiate and participate in these activities independently.  Id.

[7] Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C2.  It can include a claimant's ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  Id.

[8] Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C3.

[9] Episodes of decompensation are exacerbation or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C4.  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Id.  Episodes of decompensation may be inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system.  Id.

then the ALJ will generally conclude that the claimant's impairments are non-severe, unless the evidence indicates that there is more than a minimal limitation on the claimant's ability to perform basic work activities.  See 20 C.F.R. § 404.1520(a)(d)(1).  If the ALJ determines that a claimant's impairment is severe, he will then determine if the impairment meets or equals the severity of one of the listed mental disorders found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.  See 20 C.F.R. § 404.1520(a)(d)(2).  If the severe impairment does not meet or equal in severity any listing, then the ALJ will assess the claimant's RFC in light of the mental impairment and in conjunction with all other severe impairments.  See 20 C.F.R. §§ 404.1520(a)(d)(3), 404.1523.

Here, the ALJ concluded that there was an absence of evidence of any episodes of decompensation, or more than mild limitations in daily activities, social functioning, and maintaining concentration/persistence/pace.  (R. at 20.)  In support of his conclusion, the ALJ explained that there was no evidence in the medical record indicating Plaintiff had received mental health treatment during the relevant period.  Furthermore, the only mental limitation Plaintiff noted in support of her disability claim was memory loss, which the ALJ found to be contrary to the other evidence in the Record.  (R. at 20.)  The ALJ further noted that Plaintiff had no history of psychiatric hospitalization during the period at issue.  (R. at 19.)  For those reasons, in addition to the fact that Plaintiff "follows instructions 'OK,' gets along with authority figures 'OK,' drives, goes out alone, shops three times a month, does normal chores, and has never been fired from a job due to problems getting along with people," the ALJ concluded that Plaintiff did not suffer from a severe mental impairment.  (R. at 20.)

A review of the Record demonstrates that the ALJ's assessment that Plaintiff's psychological impairments were non-severe is supported by the substantial weight of the

evidence.  Plaintiff complained of depression and anxiety to Dr. Marston, her family doctor, who prescribed antidepressants and anti-anxiety drugs.  (R. at 125, 141, 149, 320.)  He then referred her to a Dr. Kenneth Brooks, a private psychiatrist in Richmond, but Plaintiff saw him only infrequently from 2001 to 2002.  (R. at 154.)  Moreover, Plaintiff did not receive therapy when seeing Dr. Brooks, who only prescribed medications.  (R. at 154.)  During the period at issue, Plaintiff had no history of hospitalization due to depression or anxiety and had not required or sought treatment by a mental health professional.  (R. at 18-20, 125, 149.)

Plaintiff was also referred for services to a social services organization, Crossroads Community Services Board in May of 2003 due to depression related to financial and medical problems.  (R. at 154.)  However, she was discharged from services in October of 2003 because of an inability to afford copayments and a lack of interest in treatment, other than medication.  (R. at 151.)  At the time of referral to Crossroads, Plaintiff denied any psychotic or depressive symptoms, denied being suicidal or homicidal, and also denied having any problems with her memory.  (R. at 156.)  While the examiner did find that Plaintiff described a history of anxiety and panic attacks, she also noted that she did not appear to be depressed except in relation to current stressors.  (R. at 156.)  Given that Plaintiff did not seek psychiatric treatment after October of 2005, and that she showed a lack of interest in therapy treatment, there was a sufficient basis for the ALJ to determine that there was no evidence of any episodes of decompensation during the period at issue.

Both the Crossroads Community Services Board and the state agency physician, Dr. Newell, noted in 2003 and 2005 respectively that Plaintiff was oriented to time, place, and person, and that her thoughts were organized and goal oriented.  (R. at 156, 159.)  Furthermore, in an evaluation in August 2005, a Dr. Entin noted that Plaintiff's understanding and memory,

sustained concentration and persistence, social interaction, and adaptation were not significantly limited.  (R. at 340-41.)  In a referral in 2006, a Dr. Coutlakis wrote that he and Plaintiff had discussed her issues of depression and anxiety, but the doctor only saw Plaintiff once, and he did not perform any tests.  (R. at 358, 362.)

Given such results, the ALJ did not err in finding Plaintiff's alleged psychological impairments to be non-severe.  As the ALJ explained, none of Plaintiff's psychological evaluations indicated that Plaintiff's daily living activities were affected by her mental impairments.  Indeed, Plaintiff, herself, stated that she could take care of her personal needs, such as feeding and dressing herself, and that she could perform housework, such as cooking, washing dishes, sweeping, and laundry.  (R. at 399-400.)  Further, Plaintiff reported in her function report that she interacted with authority figures "OK;" did not think she had ever been laid off from a job because of problems getting along with other people; and that she can follow written instructions "OK."  (R. at 109-10.)  She also indicated that she spent time with others, and that she often visited a friend at the friend's home.  (R. at 108, 380.)  Therefore, it was reasonable for the ALJ to classify Plaintiff's degree of limitation in the functional areas of daily activities, social functioning, and maintaining concentration/persistence/pace as no more than "mild."

## II.     Plaintiff contends that substantial evidence does not support the ALJ's disability determination because the ALJ improperly discounted Plaintiff's credibility.

Plaintiff asserts that the ALJ erred by failing to give proper weight to her subjective complaints of pain.  (Pl.'s Mem. at 27-28.)  Specifically, Plaintiff asserts that the ALJ failed to consider the totality of the Record and the records of her treating physicians which demonstrate that there were objective medical findings that support her complaints of pain.  (Pl.'s Mem. at 28.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  Craig, 76 F.3d at 594; see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work.  Craig, 76 F.3d at 595.  The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements.  Craig, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations.  See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).  The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'"  Id. (quoting

NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court

must accept the ALJ's factual findings and credibility determinations unless "'a credibility

determination is unreasonable, contradicts other findings of fact, or is based on an inadequate

reason or no reason at all.'"  Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923,

928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not,

alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 20 F.3d 918, 919

(4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be

supported by objective medical evidence showing the existence of a medical impairment which

could reasonably be expected to produce the actual pain, in the amount and degree, alleged by

the claimant."  Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of her subjective complaints of pain and

limitations as a result of her impairments, Plaintiff testified that she was in chronic pain, and

often experienced burning pain in her feet and muscle spasms in her lower back.  (R. at 390-92.)

Plaintiff was asked to describe her ability to walk and sit, and she stated that she could walk

approximately twenty to thirty feet, stand for about fifteen minutes, and sit for about ten minutes

at a time.  (R. at 397-98.)  Plaintiff further testified that she could lift and carry no more than ten

pounds and had trouble holding things with her hands because of carpal tunnel syndrome.  (R. at

398-99.)  Plaintiff also indicated that she spent most of her day at home or with a friend, and that

she was able to drive a few hours a week, prepare basic meals, and complete some household

chores such as vacuuming and washing dishes.  (R. at 403-05).

It is clear from the ALJ's opinion that he performed a thorough analysis of both the

subjective and objective medical evidence presented to arrive at his determinations as to

Plaintiff's credibility and RFC.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to generally produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (R. at 22.)  Specifically, the ALJ concluded that Plaintiff's medical records and her description of her daily activities were inconsistent with the amount of pain Plaintiff allegedly experienced.  (R. at 22.)  For example, Plaintiff testified that she had trouble staying still because of the pain and had to move around very frequently, but she also stated that on a typical morning, she sat down and watched TV.  (R. at 382, 398, 403.)  As the ALJ noted, while Plaintiff alleged disabling symptoms and functional limitations, her medical treatment had been relatively routine and conservative, with no evidence of more aggressive treatment.  (R. at 22.)  Additionally, Plaintiff reported that she drove short distances, did household chores, prepared simple meals, shopped for groceries, and handled her personal needs without assistance.  (R. at 398-404.)  Such circumstances contravene her assertions of disabling pain.

Furthermore, the ALJ examined Plaintiff's employment history and noted that her work stoppage in June 2001 appeared to have occurred for reasons unrelated to her medical condition, though Plaintiff alleged that her disability prevented her from working.  (R. at 22, 389-90.)  Plaintiff reported that she was "laid off" in January 2001 from the job she had held since January 1998 because the factory where she worked closed.  (R. at 22, 389-90.)  She accepted another job prior to June 2001, for which her wages were substantially lower than her prior level of pay, and she elected not to continue working after June 2001.  (R. at 72, 382-83.)  Accordingly, the work stoppage was not shown to coincide with any specific medical event.

It is clear that the ALJ conducted a thorough review of Plaintiff's medical records and subjective complaints, and, while questioning the veracity of some of Plaintiff's statements, nonetheless gave deference to Dr. Newell's opinions and Plaintiff's subjective complaints of pain in finding that Plaintiff's impairments of fibromyalgia and obesity limited her to sedentary employment.  (R. at 17, 414.)  The ALJ performed the required <u>Craig</u> analysis and provided an explicit rationale to support his conclusions.  The ALJ found that the Plaintiff had the severe impairments of fibromyalgia and obesity, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17, 20.)  The ALJ accordingly found that while such impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible.  (R. at 22.)

It is clear that the evidence in the Record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her pain were less than credible.  The Record additionally indicates that the ALJ, despite his credibility determination, nevertheless gave deference to Plaintiff's subjective complaints of pain and medical history by finding that she was limited to performing only sedentary work.  Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the Record.

### III.   Plaintiff contends that there was no informed medical opinion that supports the ALJ's disability determination.

Plaintiff contends that there was no informed medical opinion that supported the ALJ's determination that Plaintiff was capable of performing sedentary work.  Specifically, Plaintiff asserts that the ALJ erred in not affording significant weight to the questionnaires completed by Plaintiff's treating physicians, Drs. Marston and Coutlakis.  (Pl.'s Mem. at 29.)  Plaintiff argues

that failing to do so was improper as Plaintiff's physicians' opinions are well supported by medically acceptable diagnostic techniques and are otherwise consistent with substantial evidence in the Record.  (Pl.'s Mem. at 29-30.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been conducted.  See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions, including those from the plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.  See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Plaintiff presented the ALJ with three assessment forms, completed by three of her treating physicians, two of which are the basis of her assertions. The first assessment was conducted by Dr. Coutlakis who opined that, based on Plaintiff's diffuse pain, fibromyalgia, and lumbar spondylosis, she was not expected to improve substantially over time, and that the condition makes all but the most sedentary jobs impossible for her to perform. (R. at 358.) Indeed, Dr. Coutlakis reported that often even sedentary jobs are difficult due to fatigue. (R. at 358.) Additionally, Dr. Coutlakis reported that Plaintiff's weight, depression, anxiety, and sleep apnea made managing fibromyalgia more difficult. (R. at 361.) However, Dr. Coutlakis saw Plaintiff only once and did not conduct any tests. (R. at 358.) The second assessment was from a Dr. Marston, who concluded that Plaintiff was incapable of lifting more than five to ten pounds on a regular basis. (R. at 360.) Dr. Marston also opined that Plaintiff could not sit for more than twenty to thirty minutes without changing position, and that he was "uncertain about walking." (R. at 360.) Additionally, Dr. Marston concluded that Plaintiff's pain was frequently severe enough to interfere with concentration and regular daily activities. (R. at 360.)

In addition to the assessments provided by Dr. Coutlakis and Dr. Marston, the Record also contains an RFC Assessment completed by a physician at the request of the SSA. (R. at 158-61.) The physician met with Plaintiff, conducted a review of Plaintiff's medical records, and concluded that Plaintiff suffered from fibromyalgia with trigger points "in all four quadrants." (R. at 158, 160.) Additionally, the physician noted that Plaintiff had right grip strength of twenty pounds of force, and a left grip strength of ten pounds of force, and that both her remaining upper and lower extremities strength was 4/5. (R. at 160.) After considering all of Plaintiff's medical records, the medical consultant opined that Plaintiff could frequently lift/carry ten pounds. (R. at 160-61.) He also determined that Plaintiff could stand and walk about two

hours in an eight hour workday and could sit for four hours, but would have increased pain with prolonged sitting.  (R. at 160.)  Because of the trigger points throughout her body, the physician opined that Plaintiff would need frequent breaks and change of position.  (R. at 160.)  Further, the consultant reported that Plaintiff should avoid bending, stopping, and squatting, but that she could reach, handle, feel, grasp, and finger occasionally.  (R. at 160-161.)

The ALJ analyzed the assessments of both the treating physicians; however, after comparing their opinions and recommendations to Plaintiff's medical records and the opinions of the consultative state examiner, he gave significant, but not controlling, weight to the state agency consultants.  Specifically, the ALJ did not give significant weight to Dr. Marston and Dr. Coutlakis's opinions because they appeared "to be based primarily on subjective complaints and lack[ed] consistency and support with the other evidence of record."  (R. at 22.)  The ALJ determined that there was nothing in Plaintiff's medical records indicating that she received extensive treatment beyond medication for any of her alleged functional limitations; nor were there any indications of significant memory loss or mental treatment since 2003.  (R. at 19-21.)  Accordingly, the ALJ concluded that Dr. Marston's opinions were inconsistent with the objective medical evidence and with the reports of the state physician, which justified giving Dr. Marston's opinion less than controlling weight.  (R. at 22-23.)  Further, the ALJ noted that although Dr. Coutlakis cited longstanding severe pain, he acknowledged that he only saw Plaintiff once and did not perform any tests.  (R. at 22-23.)

A review of the ALJ's analysis demonstrates that his conclusions were based on appropriate medical evidence, and that substantial evidence supports the weight assigned to each of the physicians' assessments.  Plaintiff asserts that the ALJ's opinion had no medical foundation in the evidence, and that he improperly discounted Dr. Marston and Dr. Coutlakis's

opinions.  (Pl.'s Mem. at 29.)  However, as explained in the ALJ's opinion, his conclusions were based on the assessment by the state agency physician, Dr. Newell, and Plaintiff's own treating physicians Dr. Strachan, Dr. Purohit, and Dr. Stern, as those medical opinions were most consistent with Plaintiff's medical records.  The ALJ adopted a majority of Dr. Newell's medical assessment, concluding that Plaintiff was able to lift/carry up to ten pounds and could stand/walk for up to two hours in an eight hour workday.  (R. at 23, 160.)  The only deviation from Dr. Newell's assessment in the ALJ's findings was the ALJ's determination that Plaintiff could sit up to six hours in an eight hour day, as compared with Dr. Newell's assessment that Plaintiff could only sit four hours in an eight hour day.  (R. at 23, 160.)  As Plaintiff's medical records were inconsistent, the ALJ had the authority to accept the medical opinions that were most consistent with Plaintiff's medical records, and upon a review of the medical records and the description of Plaintiff's daily activities, such as driving and watching TV, as well as the opinion of the state consultant, the ALJ determined the Plaintiff could, in fact, sit up to six hours in an eight hour day, albeit with breaks.  (R. at 23-24, 380, 403.)

Less weight was given to Dr. Coutlakis's opinion because a review of Plaintiff's medical records did not demonstrate any basis for such stringent and permanent restrictions on Plaintiff's work capabilities as described by Dr. Coutlakis, particularly given that Dr. Coutlakis only examined Plaintiff on a single occasion.  (R. at 22-23, 358.)  A review of the Record supports the conclusion.  While Dr. Coutlakis described longstanding severe pain and recorded that it was not expected to improve substantially, he only saw Plaintiff once and did not perform any tests.  (R. at 358.)  He also reported that her muscle enzymes were normal and basic labs (completed by Dr. Marston) were within normal limits, and that she had more pain to touch than with range of

motion of individual joints.  (R. at 361.)  He further stated that her lumbar spondylosis was relatively mild, and that she may be able to fulfill sedentary jobs.  (R. at 358, 362.)

The ALJ afforded less weight to the questionnaire completed by Dr. Marston because his assessment considered conditions, including mental impairments, that were not established by the evidence.  He indicated a level of pain severe enough to interfere with concentration and daily activities, but his treatment notes do not reflect persistent findings of decreased strength, sensation, or range of motion.  (R. at 299-320, 360.)  Further, he did not suggest a need for frequent or more aggressive treatment, and he stipulated that he was uncertain about Plaintiff's ability to walk for more than thirty minutes at a time, indicating that she may be able to do so, as Dr. Newell concluded.  (R. at 360.)  Finally, Plaintiff ceased seeing Dr. Marston in October of 2005 and did not require referral to physical therapy or to a pain clinic during the period at issue. (R. at 299.)

Having reviewed the ALJ's analysis and the Record, it is clear that the ALJ's assessment of the medical opinions and records was supported by substantial evidence in the Record, including appropriate medical evidence.  As such, Plaintiff's claim that the ALJ's opinion is not supported by informed medical opinion is without merit.

**IV.  Plaintiff contends that the ALJ failed to consider all of Plaintiff's limitations in posing the hypothetical to the VE.**

Finally, Plaintiff argues that the ALJ improperly failed to consider all of Plaintiff's limitations in the hypothetical questions presented to the VE in step five of the sequential evaluation and in his determination of Plaintiff's RFC.  More precisely, Plaintiff argues that the evidence demonstrates that she suffered from the severe impairments of depression and anxiety, as well as severe pain from fibromyalgia.  (Pl.'s Mem. at 30.)  Plaintiff asserts that the ALJ improperly failed to include those impairments and the extent of her pain, and, therefore, the

ALJ's determination that Plaintiff could perform sedentary work was improper.  (Pl.'s Mem. at 30.)

At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of his/her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the "physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. § 404.1520(f).  In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists or other resources to determine whether a claimant can perform his/her past relevant work.  20 C.F.R § 404.1560(b)(2).  When utilizing a VE in this capacity, the VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work."  Id.

Plaintiff asserts that the hypothetical posed to the VE at her hearing failed to incorporate her diagnoses of depression and anxiety.  (Pl.'s Mem. at 30.)  Specifically, Plaintiff argues that had the ALJ asked the VE to consider her depression and anxiety, as well as the full extent of her pain as she reported it, the VE would have opined that she could not perform sedentary work and was thus entitled to disability benefits.  (Pl.'s Mem. at 30.)  Plaintiff contends that her RFC, and consequentially, the hypothetical should have included such limitations.  Therefore, the issue is whether the RFC was properly determined.

As discussed above, the ALJ conducted the proper RFC calculation, examining the relevant portions of the Record and Plaintiff's subjective complaints.  The ALJ performed the proper Craig analysis, as required when calculating a plaintiff's RFC, in determining at step one

that Plaintiff's fibromyalgia and obesity could reasonably be expected to produce the pain and other symptoms alleged by Plaintiff.  (R. at 19.)  In the second step, the ALJ accurately evaluated Plaintiff's statements and credibility in determining that her fibromyalgia and obesity were severe impairments that could "reasonably be expected to preclude heavy lifting and prolonged standing/walking" and thus affect Plaintiff's ability to work, but that evidence of Plaintiff's daily activities, social functioning, and concentration abilities undermined her statements of disabling pain and claims that depression and anxiety were severe impairments.  (R. at 19, 22.)

Additionally, the Record indicates that the hypothetical questions the ALJ posed to the VE were supported by the evidence in the Record.  The ALJ did not ask the VE to assume anything not supported by the Record, and in fact posed to the VE a lengthy hypothetical which addressed Plaintiff's limitations resulting from her multiple impairments, including fibromyalgia, obesity, and depression, which he thought could affect her working capabilities.  (R. at 414-20.) Specifically, the ALJ posed the following hypothetical to the VE:

> Assume you're dealing with a person who can do sedentary work.  Lift/carry ten pounds occasionally.  Less then ten pounds frequently.  Stand or walk at least two hours in an eight-hour day.  Sit approximately six hours in an eight-hour day. Push/pull unlimited.  No ropes, scaffold or crawling.  Occasionally stooping, kneeling, crouching, balancing.  (R. at 414.)

The ALJ continued by supplementing the hypothetical, with the following limitations:

> Further assume the person is the same age as the claimant and has the same educational background and past work experience . . . . add[] to that the further restriction of capable of performing simple, unskilled work not requiring extensive public interaction . . . . limit it to no repetitive use of the wrist because of carpal tunnel syndrome . . . . the manipulative abilities [] reduced to—that is reaching, handling, feeling, grasping, fingering, to occasionally.  (R. at 415-16, 419-20.)

It is clear that the ALJ's hypothetical questions were based on evidence derived from the examinations of Plaintiff conducted by multiple physicians, as the ALJ extracted the limitations

from consultative examinations by Dr. Newell, Dr. Strachan, and Dr. Stern.  (R. at 18-19, 158-61, 359.)  The supplemented hypothetical included limitations on lifting/carrying and standing/walking imposed by Plaintiff's severe impairments of fibromyalgia and obesity, as well as limitations on public interaction and use of the wrist imposed by her non-severe impairments, depression, anxiety and carpal tunnel syndrome.  (R. at 414-16, 419-20.)  Accordingly, the hypothetical questions posed by the ALJ to the VE accurately represented the claimant's RFC, and are supported by substantial evidence on the Record.

## V.    CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 13) and motion to remand (docket entry no. 14) be DENIED; that Defendant's motion for summary judgment (docket entry no. 16) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____

Date: June 3, 2009                                    Dennis W. Dohnal
Richmond, Virginia                                   United States Magistrate Judge